UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Thomas J. Hainey,
    Claimant

    v.                              Civil No. 14-cv-144-SM
                                        Opinion No. 2014 DNH 254

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Thomas Hainey, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits under the Social Security Act, 42 U.S.C. §§ 423 and 1381–1383c (the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I.   Procedural History.

In 2009, claimant filed applications for DIB and SSI benefits, alleging that he had been unable to work since July 18,

2007.  In May of 2011, an Administrative Law Judge ("ALJ") denied those applications.  But, upon review, the Decision Review Board remanded the case for further consideration.  Accordingly, in August of 2012, claimant, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three months later, on November 30, 2012, the ALJ issued his written decision, again concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

The Appeals Council denied claimant's request for review, making the ALJ's denial of claimant's applications the final decision of the Acting Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  He then filed a "Motion for an Order Reversing the ALJ Decision" (document no. 9).  In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 10).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be

2

recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.


## Standard of Review

I.    "Substantial Evidence" and Deferential Review.

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if
supported by substantial evidence.  See 42 U.S.C. §§ 405(g),
1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &
Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Consolidated Edison
Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than
a preponderance of the evidence, so the possibility of drawing
two inconsistent conclusions from the evidence does not prevent
an administrative agency's finding from being supported by
substantial evidence.  Consolo v. Federal Maritime Comm'n., 383
U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S.
389, 401 (1971).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking DIB and/or SSI benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982).  <u>See also</u> 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.


### Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-

step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540
U.S. 20, 24 (2003).  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since his alleged onset of disability: July 18, 2007.  Admin.
Rec. at 24.  Next, he concluded that claimant suffers from the
following medically determinable impairments: "cognitive disorder
NOS; adjustment disorder; obesity; and right shoulder (torn
rotator cuff, status post arthroscopy)."  Id.  But, the ALJ
determined that those impairments, regardless of whether they
were considered alone or in combination, did not significantly
limit claimant's ability to perform basic work-related activities
for 12 consecutive months.  Accordingly, at step two of the
analysis, the ALJ concluded that claimant's impairments are not
"severe" and, therefore, he is not disabled.  Id. at 24-26.

      Nevertheless, the ALJ continued with the sequential analysis
and concluded, in the alternative, that even if one were to
assume that claimant's impairments are severe, they do not meet
or medically equal any of the impairments listed in the
regulations.  Id. at 26-28.  Continuing with the sequential
analysis, the ALJ next concluded that claimant retained the
residual functional capacity ("RFC") to perform the exertional

demands of medium work.[1]  He noted, however, that claimant can

perform overhead reaching only occasionally and is limited to

short and simple tasks in a routine work environment.  Id. at 28–

32.  In light of those restrictions, the ALJ concluded that

claimant was not capable of returning to any of his prior jobs.

Id. at 32.


    Finally, the ALJ considered whether there are any jobs in

the national economy that claimant might perform.  Relying upon

the testimony of a vocational expert, the ALJ concluded that,

notwithstanding claimant's limitations, he "is capable of making

a successful adjustment to other work that exists in significant

numbers in the national economy."  Id. at 33.  Consequently, the

ALJ concluded that claimant was not "disabled," as that term is

defined in the Act, through the date of his decision (November

30, 2012).

---

[1]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by failing to properly weigh and consider opinion evidence from various medical professionals; and (2) by incorrectly determining his residual functional capacity. Because the court agrees that the ALJ's decision to substantially discount critical aspects of the opinions rendered by examining medical sources was inadequately supported, it need only address that claim.

Claimant asserts that the ALJ failed to give sufficient weight to the opinions of various medical professionals who examined him.  In particular, he focuses on the opinions of Dr. Darlene Gustavson, a licensed psychologist, who conducted a consultative examination of claimant in July of 2009 (Admin. Rec. at 343-47) and Dr. Janet Levenson, a licensed psychologist who conducted a consultative examination approximately three years later, in April of 2012 (id. at 468-72).

The substance of claimant's history as provided to each examining medical source was consistent.  He is financially dependent upon his sister and lives in a rooming house for which she pays.  He has no health insurance - hence his infrequent visits to medical professionals and sparse medical records.

8

According to Dr. Gustavson, claimant "is currently treated via a nurse at the homeless shelter who only allows each patient to discuss two issues at each session.  He has not yet discussed his history of alcohol abuse or his liver damage and memory problems."  Admin. Rec. at 344.  With regard to claimant's cognitive (memory) impairment, Dr. Levenson noted the following:

> [Mr. Hainey] claims that in 2007, co-workers began commenting that he was getting Alzheimers.  He was fired in July, 2007 as he couldn't do [the] job anymore due to forgetfulness.  After leaving the Radisson a former employer gave him a job at the Hanover Street Chop House.  He lasted one month, as he couldn't remember how to make dishes without writing them down and referencing them which slowed his production.  He then worked for 1 week as a breakfast cook at Belmont Hall.  Again, he was forgetful, couldn't keep up with his duties and burned trays of bacon.  This was two years ago and he hasn't worked since.

Id. at 469.  See also id. at 344 (Dr. Gustavson's discussion of the impact of claimant's cognitive impairment on his ability to maintain employment).

Also of note is the fact that, in preparation for his meeting with Doctor Gustavson, claimant "wrote down a list of what he forgets, but forgot the list at his residence," id. at 343, and he initially showed up for his appointment with Dr. Levenson on the wrong day, id. at 469.  There is no evidence of malingering and claimant seems genuinely desirous of resolving

(if possible) his memory issues and securing gainful employment.
See, e.g., Id. at 343, 472.

Both Dr. Levenson and Dr. Gustavson administered a "mini
mental status examination" (also known as an "MMSE") and drew
substantially similar conclusions.  Dr. Levenson observed that,
"Claimant reports impairment in his ability to encode and store
new information.  This was consistent with his performance on the
memory tasks of the MMSE where he needed two trials in order to
properly encode three unrelated words and after a brief delay he
did not recall any of them correctly.  He did not read through
the BDI instructions as had been expressly instructed."  Admin.
Rec. at 471.[2]

_____

[2]   As support for her conclusions, Dr. Levenson noted the
following:

    On the first trial of immediate recall of three words,
    Jim paused before starting his response.  He provided
    one correct response and two responses that were
    incorrect but in the same functional category as the
    target word.  He provided the fruit "orange" in place
    of "apple," and could not decide if the furniture word
    was "chair or table."  On second repetition of the
    target words he got 3/3.  He commented that he had
    become nervous when he knew I was testing his memory.
    He aborted the serial 7's after providing one correct
    and one incorrect subtraction, despite counting on his
    fingers.   Serial 3's was presented which he performed
    with one error.  Confrontation naming and repetition
    performed correctly.  On delayed recall of the three
    words he offered three words correct to the functional
    categories but not the right words.  He again offered

In their written reports, both Dr. Levenson and Dr.
Gustavson concluded that claimant's cognitive functioning is
substantially impaired.  Dr. Levenson opined that claimant
suffers from a "marked" impairment in his ability to perform
work-related tasks (concentration, persistence, and pace) and a
"moderate" impairment in his ability to tolerate work-related
stress.  Admin. Rec. at 471.  Similarly, Dr. Gustavson opined
that claimant's "cognitive functioning is significantly impaired
regarding attention, concentration and general slow processing."
Id. at 345.  She also opined that "claimant is not able to
understand and remember instructions," and is unable "to sustain
attention and to complete tasks."  Id. at 346.  Finally, Dr.
Gustavson concluded that claimant is "not able to tolerate
stresses common to a work environment which includes [the]
ability to make decisions."  Id.

In 2009, William Jamieson, Ph.D., completed a Mental
Residual Functional Capacity Assessment, in which he concluded
that claimant was "markedly limited" in his ability to maintain
attention and concentration for extended periods, as well in his
ability to perform activities within a schedule and maintain

---

"orange" and "chair," for the coin he said "it was a
nickel or dime."  "Penny" was not prompted when
correctly identifying a "pen" on the subsequent task.

Admin. Rec. at 470.

regular attendance.  Admin. Rec. at 363.  He concluded his
assessment with the following:

> Greatest weight is given to recent psych. CE.  This
> evaluation describes significant functional
> impairments.  Allegations are credible.
>
> Due to cognitive impairments, the claimant is not able
> to maintain attention and persistence to task over
> extended periods.  He would show a greater than
> acceptable number of interruptions in a normal workday
> and work week.

Id. at 365.  Subsequently, Dr. Jamieson completed a Psychiatric
Review Technique, in which he concluded that claimant suffers
from an organic mental disorder (memory impairment) which renders
claimant "markedly limited" in his ability to maintain
concentration, persistence, or pace.  Id. at 350 and 359.


In support of his conclusion that claimant's cognitive
impairment is not disabling, the ALJ noted:

> The claimant's medical records also show limited
> treatment for mental health symptoms.  Recent mental
> health notes from his primary care provider indicate
> that he should consider vocational rehabilitation,
> evidencing that he does not believe the claimant is
> disabled. . . . Although he recently had an initial
> evaluation at Bedford Counseling in Spring 2012, there
> are not treatment records in the evidence of record
> beyond the initial intake.  There also are no records
> showing treatment or reported psychological symptoms
> during 2007, 2008, or 2009.  At his consultative exam
> in May 2012, he is noted to have normal speech,
> appropriate affect, no signs or symptoms of psychosis
> or formal thought disorder, and no history of
> psychiatric hospitalization.  In addition, although the

<u>claimant alleges memory impairment, he was able to
participate in a 60-minute consultative exam without
difficulty, and he reports that he is able to play
chess, read and watch movies</u>.  His recent psychological
evaluation notes possible cognitive impairment, but the
examiner did not know the etiology, treatment or
prognosis concerning his memory and there is little
other diagnostic evidence in the record to support a
finding of cognitive disorder.

Admin. Rec. 30 (emphasis supplied).[3]


It seems the ALJ may have misunderstood claimant's current
activities of daily living because, in concluding that claimant's
cognitive disorder is not debilitating he relied on incorrect or
no longer applicable facts.  For example, in support of his
findings, the ALJ repeatedly noted that claimant likes to "play
chess, go for walks and even do karate."  Admin. Rec. at 30.  <u>See
also</u> <u>id</u>. at 27 and 29.  But, the record indicates that claimant
has not been able to perform karate or play chess for several
years.  <u>Id</u>. at 47, 305, 346.  And, when he goes for walks,
claimant testified (repeatedly and consistently) that he must be
careful to stick to his familiar path, otherwise he gets lost.
<u>Id</u>. at 49, 68, 308, 414.  Moreover, while the ALJ noted that Dr.

---

[3]    The ALJ is referring to the examination and psychological
evaluation prepared by Dr. Levenson.  When asked when she
believed claimant could be expected to return to work, Dr.
Levenson said: "I don't feel I can provide a response to [this
question] as I do not know the etiology, treatment, or prognosis
regarding his memory condition.  This needs to be evaluated by
qualified medical/neuropsychological professionals."  Admin. Rec.
at 472.  It appears that no such evaluation has been made.

13

Gustavson reported that claimant "was able to participate in a
60-minute interview without complaints," id. at 354, the ALJ did
not mention Dr. Gustavson's opinion that "his cognitive
functioning is significantly impaired regarding attention,
concentration and general slow processing," id. at 345, which of
course puts the report in an entirely different context.  And,
although the ALJ observed that claimant was able to follow
"simple 3 word written instructions" given to him by Dr.
Levenson, id. at 32 and 470, he did not discuss Dr. Levenson's
observation that claimant was unable to properly follow 3-step
oral instructions.  See Id. at 470.


     Finally, while the ALJ correctly noted that claimant's
medical records have few references to mental health treatment,
that is far more likely explained by claimant's lack of health
insurance and limited access to health care than by the absence
of a treatable problem — a point that, if significant, should be
resolved upon a better-developed record before the ALJ.  See
generally SSR 96-7p, Policy Interpretation Ruling Titles II and
XVI: Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements, 1996 WL 374186 at *8
(noting that the lack of medical treatment records may be
explained when "the individual may be unable to afford treatment
and may not have access to free or low-cost medical services").

14

When claimant did undergo consultative evaluations by mental health professionals, they consistently joined in concluding that his organic mental health disorder substantially limits his functioning (only non-examining sources questioned its impact on claimant's ability to maintain gainful employment).

This is, to be sure, a close and difficult case.  The record can be read to plausibly support the ALJ's conclusion that claimant's physical impairments, while severe, do not preclude gainful employment – in that regard, the ALJ's decision is thorough, comprehensive, and persuasive.  But, claimant's undisputed history of having been repeatedly fired from various food preparation jobs for failing to remember fairly simple tasks, as well as the consistent opinions of the examining medical professionals who tested his memory and cognitive functioning, all strongly suggest that his cognitive impairment is a substantial (if not disabling) one.  See, e.g., Admin. Rec. at 59 (vocational expert opined that if claimant is assumed to have a "marked impairment in task performance," that "would have the effect of eliminating all jobs").  See also Id. at 471 (Dr. Levenson opined that claimant does, indeed, have a "marked" degree of functional loss in the realm of "task performance") and 346 (Dr. Gustavson opined that claimant is "not able to sustain attention [or] complete tasks").

15

While it is the ALJ's role to weigh the evidence and resolve any conflicts, he must give a sound basis for his decisions - particularly when (as in this case) he has chosen to ascribe more weight to the opinions of non-treating, non-examining physicians than those of examining medical professionals.  <u>See, e.g.</u>, 20 C.F.R. § 404.1527(c)(1).  Here, the ALJ's written decision does not adequately explain his decision to discount the opinions of Dr. Gustavson and Dr. Levenson.  And, while the ALJ is certainly entitled to give significant weight to the opinions of non-examining state agency physicians in appropriate circumstances, in this case those opinions did not address claimant's (seemingly significant) cognitive limitations.[4]

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted to the extent he seeks a remand for further proceedings.  The Acting Commissioner's motion to affirm her decision (document no. 10) is denied.

---

[4]      The court notes that because Dr. Levenson examined claimant and issued her report in May of 2012, her opinions were not part of claimant's medical records when they were provided to the state agency non-examining physicians.  <u>See</u> Admin. Rec. at 397-406.  Consequently, the opinions of those state agency physicians (to which the ALJ afforded "significant weight") are somewhat incomplete and less persuasive.

16

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated November 30, 2012 is vacated and this matter is hereby remanded for further proceedings consistent with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

December 5, 2014

cc:  John A. Wolkowski, Esq.
     Robert J. Rabuck, Esq.

17